UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                              |   |                         |
|----------------------------------------------|---|-------------------------|
| JOHN McGILLEN and<br>AMY McGILLEN,           | ) |                         |
| Plaintiffs,                                  | ) |                         |
| v.                                           | ) | Civil No. 19-11917-LTS  |
| JP MORGAN CHASE BANK, N.A.,<br>ORLANS, PC, MTGLQ INVESTORS, and<br>JAMIE WELCH, ESQ. | ) | |
| Defendants.                                  | ) |                         |

MEMORANDUM AND ORDER ON MOTIONS TO DISMISS (DOC. NOS. 11, 14, 27)

January 31, 2020

SOROKIN, J.,

On January 9, 2019, Plaintiffs filed a complaint in the Barnstable Superior Court, alleging various claims stemming from the origination and servicing of a mortgage loan granted by Defendant JPMorgan Chase Bank N.A. ("Chase") in April 2007 on real property located at 666 Main Street in Harwich, Massachusetts (the "Property"). Doc. No. 1-1 at 4.[1] Plaintiffs filed an amended complaint on September 5, 2019. Doc. No. 1-1 at 6; id. at 31-53 (First Amended Complaint, "Complaint").

Defendants removed the action to this Court on September 9, 2019. Doc. No. 1. They now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted. Doc. No. 11 (Motion to Dismiss by

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

1

Defendants Orlans, PC and Jamie Welch); Doc. No. 14 (Motion to Dismiss by Defendant Chase); Doc. No. 27 (Motion to Dismiss by Defendant MTGLQ Investors, "MTGLQ"). For the reasons that follow, the Court ALLOWS Defendants' motions to dismiss (Doc. Nos. 11, 14, 27).

I. BACKGROUND[2]

On September 25, 2000, Plaintiffs received the quitclaim title to the Property by way of tenancy in the entirety. Doc. No. 1-1 ¶ 9. In early 2007, Plaintiffs began having trouble with unsecured debts and spoke to Robert Mitchell, a mortgage broker with CNS Mortgage, LLC ("CNS Mortgage"), seeking financial advice.[3] Id. ¶ 10. Mitchell advised Plaintiffs that the only way for them to resolve their financial difficulties was to consolidate their unsecured debt with mortgage financing procured through him and CNS Mortgage. Id. ¶ 12. In March 2007, Plaintiffs executed a loan application, in which they entered their financial information, including all expenditures and lines of credit, and included copies of their tax returns, bank statements, debts, and number of dependent children. Id. ¶¶ 15-16. Later that month, Mitchell told Plaintiffs he was having trouble finding a lender and that he would proceed using only Plaintiff Amy McGillen's name because she had a better credit score than her husband, Plaintiff John McGillen. Id. ¶ 18. In early April 2007, Mitchell informed Plaintiffs that he had obtained a loan for them and told them that they had to come to his office the following day for the closing of their loan. Id. ¶ 20.

---

[2] In the main, the factual allegations that follow are drawn from the Complaint, Doc. No. 1-1, but certain details are also taken from official public records. The Court accepts all non-conclusory facts alleged in the Complaint as true, Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and draws all reasonable inferences in favor of the plaintiffs, Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

[3] CNS Mortgage is not a defendant in this action but was at all relevant times an agent of Chase. Doc. No. 1-1 ¶ 29.

2

When Plaintiffs arrived at Mitchell's office for the closing on April 6, 2007, Mitchell had Ms. McMillen sign additional papers before having her go into the room with the closing attorney; Plaintiffs did not have time to read or review those papers. Id. ¶ 21. It had previously been agreed and understood between Mitchell and Plaintiffs that they would be seeking a loan with affordable repayment terms. Id. ¶ 22. Upon learning that the new monthly mortgage payment would exceed $3,300 per month, Plaintiffs informed Mitchell that contrary to his prior representations of reasonableness and affordability, this new monthly mortgage payment was not affordable as it exceeded their combined total income. Id. ¶ 25. Mitchell endeavored to overcome such objection by telling Plaintiffs that Ms. McGillen should just sign the papers and that he would "straighten it all out later." Id. ¶ 26. Despite Mitchell's urgings that Plaintiffs complete the signing for the new loan, Plaintiffs objected, stating that they could not afford the loan and that they did not wish to accept it. Id. ¶ 27. They then stood up from the table and walked away without completing the signing of the loan documents and without taking any papers with them. Id.

On April 6, 2007, a promissory note was created in favor of Chase as promisee and Ms. McGillen as promissor (the "Note"). Id. ¶ 30. On the same day, a mortgage on the Property was given from Plaintiffs to Chase.[4] The resulting mortgage instrument was recorded in the Barnstable County Registry of Deeds in Book 21937, Page 225 (the "2007 Mortgage," together with the Note, the "2007 Mortgage Loan"). Id. ¶ 31. The Note pertaining to the 2007 Mortgage Loan recited a maturity date of May 1, 2037. Id. ¶ 62.

Approximately two months after the closing, Plaintiffs began receiving mortgage statements seeking monthly payments for the 2007 Mortgage Loan that they had not signed and

---

[4] Chase transferred ownership of the 2007 Mortgage Loan to Defendant MTGLQ on August 24, 2017. Id. ¶ 61.

3

had rejected. Id. ¶ 35. Plaintiffs contacted Mitchell to ask what was going on and Mitchell told them that they had signed the paperwork, received the loan, and had to start paying it back. Id. ¶ 36. Plaintiffs denied accepting the loan and reminded him that they had told him they did not want it because they could not afford it. Id. ¶ 37. They also reminded Mitchell that he had said he could "straighten out" the problem of the unaffordable monthly payments; Mitchell responded that Plaintiffs had no option and were now "stuck with the loan." Id. ¶ 38.

After trying to talk to Mitchell for a few months without success about the loan and about the fact that they had not received the loan documents, Plaintiffs reached out to CNS Mortgage and to Chase, but they too refused to cooperate or to provide Plaintiffs with copies of their loan documents. Id. ¶¶ 39-40. Plaintiffs eventually obtained some of the loan documents and learned that a second loan application had been filled out by Mitchell in Ms. McGillen's name only, and that he had left out all her financial information (including the fact of her two dependents), which Plaintiffs had provided Mitchell with their initial loan application. Id. ¶ 41. They also learned that Mitchell had secured the loan by submitting an application on behalf of Ms. McGillen for a "no documentation" loan ("Second Loan Application"). Id. Ms. McGillen never signed the Second Loan Application. Id. ¶ 42.

Many of the key closing documents that pertained to the 2007 Mortgage Loan, including disclosure forms, the Second Loan Application, and the 2007 Mortgage, were forged using Plaintiffs' names. Id. ¶ 43. In November 2007, Plaintiffs notified Chase about the forged 2007 Mortgage Loan and related closing documents. Id. ¶ 44. In March 2008, Chase's Home Mortgage Fraud Operations Department, acknowledged the forged closing documents and forwarded its findings of fraud to the offices of Chase's Executive Resolution Group to resolve the matter of the forged 2007 Mortgage Loan with Plaintiffs. Id. ¶ 48. No such resolution ever transpired.

4

In April 2008, Chase sent Plaintiffs a Notice of Default.  Id. ¶ 63.  A few months later, on September 29, 2008, Plaintiffs served Chase with a notice to rescind the 2007 Mortgage Loan based on alleged defects in formation, fraud and material misrepresentations, failure to make material disclosures, and for material breach.  Id. ¶ 84; id. at 79-83 (Notice of Rescission dated September 29, 2008).[5]  Sometime between April 25, 2008, and March 9, 2009, Chase sent Plaintiffs notice that the Note had been accelerated and that the full balance of the loan was due and payable immediately.  Id. ¶ 64.  The maturity date of the 2007 Note pertaining to the 2007 Mortgage Loan had been accelerated from May 1, 2037 to a date prior to March 9, 2009.  Id. ¶ 69.  By letter dated March 31, 2009, Plaintiffs again notified Defendants that the 2007 Mortgage Loan had been forged, rescinded, and that it was otherwise void and unenforceable.  Id. ¶ 45.  Nevertheless, since March 9, 2009, Defendants have treated the 2007 Note as having been accelerated, including by filing a 2009 Land Court Servicemembers action, recording notice of the Land Court action, publishing foreclosure notices for a planned sale on September 30, 2010, and issuing the notice of mortgage foreclosure sale dated September 1, 2010.  Id. ¶ 70.

On September 21, 2010, Plaintiffs filed a Chapter 13 petition in the U.S. Bankruptcy Court for the District of Massachusetts.  In re: Amy J. McGillen and John M. McGillen, Chapter 13 Case No. 10-20280 (Bankr. D. Mass.).  See Doc. No. 15-1 (copy of court docket in Chapter 13 Case No. 10-20280).  On March 18, 2011, Plaintiffs made a police report that their signatures had been forged on the 2007 Mortgage Loan and forwarded a copy of the report to Chase.  Doc. No. 1-1 ¶¶ 56-57.  Chase took no meaningful action in response.  Id. ¶¶ 58-60.

---

[5] Plaintiffs do not allege that they returned or offered to return the funds that were the subject of the 2007 Mortgage Loan when they sent the notice of rescission or that they did so at any other time.  See generally Doc. No. 1-1.

In December 2013, Plaintiffs filed an adversary proceeding complaint in their Chapter 13 bankruptcy case asserting various origination and servicing-related claims related to the 2007 Mortgage Loan ("Adversary Complaint"). McGillen v. JPMorgan Chase Bank, N.A. f/k/a Chase Home Finance, LLC et al., Adv. Proc., Case No. 13-01435 (Bankr. D. Mass.). See Doc. No. 15-2 (copy of Adversary Proceeding Complaint). Plaintiffs' Adversary Complaint named Chase and CNS Mortgage as defendants. See id. The Adversary Complaint contained detailed factual allegations about the misconduct of CNS Mortgage in originating the Mortgage Loan—including, inter alia, that Ms. McGillen's signature was forged on the loan application at issue in this dispute—and about Chase's subsequent mortgage-servicing misconduct. See id. In January 2014, the Bankruptcy Court dismissed the Adversary Complaint for lack of jurisdiction after Plaintiffs voluntarily dismissed their Chapter 13 case. Doc. No. 15-3 (copy of court docket in Chapter 13 Case No. 13-01435) at 4.

For 10 years following Defendants' notice that the 2007 Mortgage Loan documents had been forged they "gave [Plaintiffs] the run around," and Chase "bounced the [Plaintiffs] around from one internal department at Chase to another . . ." without resolution. Doc. No. 1-1 ¶ 58. On December 16, 2016, Defendants filed a second complaint with the Land Court to foreclose on the Property "by virtue of the 2007 Mortgage." Id. ¶ 79.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts must "take all factual allegations [in the Complaint] as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodríguez-

Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007). "To survive a motion to dismiss, a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). In reviewing the complaint, the Court can consider documents attached to or fairly incorporated into the complaint and facts susceptible to judicial notice. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Massachusetts law governs this diversity case. O'Brien v. Deutsche Bank Nat'l Trust Co., No. 19-1143, 2020 U.S. App. LEXIS 1599, at *8 (January 17, 2020). State law includes the applicable state statutes of limitations. Id. (citing Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015)).

### III. DISCUSSION

The Complaint alleges twelve counts: violation of the Massachusetts Consumer Protection Act, Mass. Gen. L. c. 93A (Count I), fraud (Count II), civil conspiracy (Count III), slander of title (Count IV), quiet title (Count V), negligence (Count VI), promissory estoppel (Count VII), negligent misrepresentation (Count VIII), intentional/negligent infliction of emotional distress (Count IX), breach of fiduciary duty (Count X), declaratory judgment (Count XII), and accounting (Count XII). Doc. No. 1-1 at 39-51. All of Plaintiffs' claims stem from the alleged actionable conduct relating to the origination of the 2007 Mortgage Loan, and to its subsequent servicing into 2011. See generally Doc. No. 1-1. Plaintiffs seek rescission and release of the 2007 Mortgage Loan, damages, attorney's fees and costs, and declaratory and other relief. Id. at 51-52.

A. Counts I–IV and VI–X are barred by the applicable statutes of limitations.

Under Massachusetts law, tort claims accrue, at the latest, when the plaintiff knew or should have known that actionable conduct by the defendant resulted in injury or harm. Passatempo v. McMenimen, 960 N.E.2d 275, 288-89 (Mass. 2012). Massachusetts courts apply the "discovery rule" to determine when such claims accrue. See id. "Under this discovery rule, the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered, that he has been harmed or may have been harmed by the defendant's conduct." Id. (quotation marks, modifications, and citations omitted). Moreover, "reasonable notice that . . . a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." Koe v. Mercer, 876 N.E.2d 831, 837 (Mass. 2007) (quotation marks, modification, and citation omitted). Thus, "accrual under the discovery rule is not delayed until a plaintiff learns that he was *legally* harmed." Harrington v. Costello, 7 N.E.3d 449, 457 (Mass. 2014) (emphasis in original); see also Doe v. Harbor Schs., Inc., 843 N.E.2d 1058, 1066 (Mass. 2006) ("We reject [plaintiff's] contention that her fiduciary claim does not accrue until she first understood that she had been legally harmed, i.e., that she could sue [defendant] for her injuries").

Pursuant to Mass. Gen. L. c. 260 § 2A, tort claims, including claims for fraud, must be brought "within three years next after the cause of action accrues." Passatempo, 960 N.E.2d at 288 ("claims [that] sound in tort . . . are governed by the three-year limitation period provided by G. L. c. 260 § 2A."). Chapter 93A claims have a four-year limitations period, pursuant to c. 260 § 5A. O'Brien, 2020 U.S. App. LEXIS 1599, at *9 ("The limitations period for claims brought under Chapter 93A is four years from the date the cause of action accrues.") (citing c. 260 § 5A and Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) (same)).

8

Plaintiffs filed their initial complaint in this action long after the expiration of the three-year statute of limitations on Plaintiffs' tort claims (Counts II – IV and VI – X)[6] and the four-year statute of limitations on their Chapter 93A claim (Count I).  By their own admission, Plaintiffs knew of the alleged fraud as early as November 2007, when they notified Chase that their signatures on the 2007 Mortgage Loan and related closing documents had been forged.  As alleged, the Complaint reveals that Plaintiffs knew since at least November 2007 they had been defrauded and harmed by Defendants' misconduct at the origination of the 2007 Mortgage Loan and that they undertook efforts over the next five years to obtain a remedy.   They also knew of Chase's alleged wrongful mortgage-servicing as early as September 2008, when they sent Chase a notice to rescind the 2007 Mortgage Loan based on the alleged origination-fraud.  The following March, Plaintiffs again notified Defendants that the 2007 Mortgage Loan had been forged and that it was, in their view, rescinded, void, and unenforceable.  Two years later, in March 2011, they filed a police report alleging that their signatures had been forged on the 2007 Mortgage Loan and forwarded a copy of the report to Chase.  They subsequently filed an Adversary Complaint against CNS and Chase in December 2013.  Plaintiffs took the latest of this series of actions more than five years before they initiated this suit in early 2019.

The facts as alleged demonstrate that Plaintiffs knew they had been injured by Defendants' conduct as early as November 2007.  It is therefore beyond dispute that Plaintiffs knew of the alleged misconduct underlying their Chapter 93A and tort claims—and that their claims therefore began to accrue—well outside the applicable limitations periods.  See, e.g., O'Brien, 2020 U.S.

---

[6] Plaintiffs' tort claims are: fraud (Count II), civil conspiracy (Count III), slander of title (Count IV), negligence (Count VI), promissory estoppel (Count VII), negligent misrepresentation (Count VIII), intentional/negligent infliction of emotional distress (Count IX), and breach of fiduciary duty (Count X).

App. LEXIS 1599, at *9 (affirming dismissal of plaintiff's Chapter 93A claim because, "as alleged, [it] accrued at the inception of the loan, which 'was issued in violation of established principles of fairness' and 'was unaffordable to O'Brien from the outset.'"); Larace v. Wells Fargo Bank, N.A., 102 N.E.3d 1030 (Mass. App. Ct. 2018), review denied sub nom. LaRace v. Ablitt & Scofield, P.C., 103 N.E.3d 1229 (Mass. 2018) (affirming dismissal of tort claims, including claim for wrongful foreclosure and slander of title, and of dismissal of Chapter 93A claim, brought more than three and four years respectively after plaintiffs knew or should have known that they had been injured).

Plaintiffs counter that the continuing violation doctrine applies to extend the applicable statutes of limitations and to preserve their causes of action. Doc. No. 20 at 10-11. Citing cases in the field of employment discrimination, Plaintiffs argue that "where the wrongful conduct is readily identifiable, such as in unequal wage claims, the continuing violation doctrine treats them as giving rise to a cause of action each time they occur." Id. at 10 (citing Silvestris v. Tantasqua Regional Sch. Dist., 847 N.E.2d 328 (Mass. 2006) and Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928 (Mass. 2001)). And they contend that because the Complaint "alleges that the 2007 Mortgage Loan was void and unenforceable from inception in 2007, due to forgery and unconscionable terms, . . . any effort by Chase to collect or otherwise enforce the 2007 Mortgage Loan from 2007 to the present constituted continuing violations of, inter alia, prohibited debt collection practices, civil conspiracy, and the tortious infliction of emotional distress." Id. at 11.

Not so. As the First Circuit recently observed in O'Brien:

> Some courts in this Circuit have considered [the doctrine of continuing violation] in regard to debt collection letters in Fair Debt Collection Practices Act cases. See, e.g., Simard v. LVNV Funding, LLC, No. 10-11009-NMG, 2011 U.S. Dist. LEXIS 112848, 2011 WL 4543956, at *5 (D. Mass. Sept. 28, 2011) ("Under a continuing violation theory, each new communication from the debt collector is viewed as a separate violation and a new statute of limitations period accrues. However, if the

10

> new communication concerns an old claim, the new communication is subject to the statute of limitations period for the old claim." (internal citation omitted)); Everton v. HSBC Bank USA, N.A., No. 18-10264-FDS, 2018 U.S. Dist. LEXIS 178961, 2018 WL 5084838, at *3 (D. Mass. Oct. 17, 2018) ("The mortgage statements containing the disputed principal balance were new communications concerning an old claim . . . not new claims or separate violations."), appeal dismissed, 2019 U.S. App. LEXIS 15250, 2019 WL 2173782 (1st Cir. Apr. 1, 2019). Here, where it is alleged that collection statements were issued pursuant to the allegedly unfair terms of the original loan, we discern no basis for applying a continuing violation theory.

2020 U.S. App. LEXIS 1599, at *13 n.4; see also Gilbert v. City of Cambridge, 932 F.2d 51, 58 (1st Cir. 1991) (stating that in applying continuing violation theory, "courts must be careful to differentiate between [unlawful] acts and the ongoing injuries which are the natural, if bitter, fruit of such acts") (internal quotation marks and citations omitted).

So too here. Plaintiffs broadly allege that Defendants continued their mortgage-servicing misconduct for 10 years after first receiving notice of the origination fraud, see Doc. No. 1-1 ¶¶58-60, but do not allege any specific misconduct by Defendants after 2011 that gave rise to a claim in its own right. For example, they allege that on December 16, 2016, Defendants filed a complaint with the Land Court to foreclose on the Property, but concede Defendants took this action "by virtue of the 2007 Mortgage." Id. ¶ 79. Like Plaintiffs' other allegations of fraud and misconduct, this allegation also stems from the origination and servicing of the 2007 Mortgage Loan, which anchor Plaintiffs' Chapter 93A and tort claims, and is therefore barred by the same applicable statutes of limitations.

Citing a case concerning the Massachusetts Statute of Frauds, Plaintiffs argue in the alternative that "statutes of limitations do not apply to the non-enforceability of contracts due to fraud, illegality, unclean hands, statute of frauds or unconscionability." Doc. No. 20 at 7 (citing

11

Webster v. Kowal, 476 N.E.2d 205 (Mass. 1985)).[7] This argument also fails, not least because the Statute of Frauds, which renders unenforceable certain agreements unless they have been reduced to writing, see Mass. Gen. L. c. 259, is not at issue in this case. More problematically, Plaintiffs would have this Court find that no statutes of limitation apply in cases involving allegations of fraud or other illegality at the outset of a contract, no matter how long plaintiffs have known of the illegality before bringing suit. That is simply not the law in Massachusetts. See, e.g., Proal v. JP Morgan Chase & Co., 202 F. Supp. 3d 209 (D. Mass. 2016) (Hillman, J.), aff'd sub nom. Proal v. J.P. Morgan Case Bank, N.A., 701 Fed. Appx 12 (1st Cir. 2017) (applying statute of limitations to Chapter 93A claim despite plaintiff's contention that assignment to the foreclosing mortgagee was void as a matter of law); Gibbs v. SLM Corp., 336 F. Supp. 2d 1 (D. Mass. 2004) (Saris, J.) aff'd, No. 05-1057, 2005 U.S. App. LEXIS 29462) (1st Cir. August 23, 2005) (applying statute of limitations to dismiss plaintiff's claim to void loan consolidation despite allegation of economic duress at loan origination); O'Brien, 2020 U.S. App. LEXIS 1599; Larace, 102 N.E.3d 1030.[8]

---

[7] Plaintiffs filed an opposition to each Defendant's motion to dismiss. Doc. No. 18 (Opposition to Motion to Dismiss by Orlans and Welch); Doc. No. 20 (Opposition to Motion to Dismiss by Chase); Doc. No. 36 (Opposition to MTGLQ Motion to Dismiss). The Court has carefully reviewed each of Plaintiffs' Oppositions, which make many of the same arguments. See id. For ease of reference, to the extent Plaintiffs make the same argument in more than one Opposition, the Court cites only to one.

[8] Plaintiffs also contend that "[n]otwithstanding any statute of limitations period, [they] may avail themselves of relief pursuant to state recoupment laws." Doc. No. 20 at 9 (citing May v. SunTrust Mortg., Inc., 7 N.E.3d 1036 (Mass. 2014). This argument also fails because Plaintiffs make no claim for recoupment in their Complaint. See Doc. No. 1-1. In any event, recoupment is not available to parties, such as Plaintiffs here, seeking rescission. May, 7 N.E.3d at 1042 (explaining that recoupment and rescission are consistently treated as separate, nonoverlapping, remedies; a buyer defrauded in the purchase of property may seek rescission or recoupment, not both). Even it if were available as an alternative remedy, it would not apply here, for it only serves as an affirmative defense "to reduce or extinguish the plaintiff's claim;" it does not "result in an affirmative recovery for the defendant." Bose Corp. v. Consumers Union of U.S., Inc., 326 N.E.2d 8, 10 (Mass. 1975); May, 7 N.E.3d at 1042 (Mass. 2014) (quoting Bose). Where, as here, Plaintiffs have filed suit seeking damages, and none of the Defendants have counterclaimed for nonpayment, the doctrine of recoupment has no application.

Because the allegations underlying Plaintiffs' Chapter 93A and tort claims (Counts I – IV and Counts VI – X) relate to actions occurring well outside the statute of limitations period, the Court ALLOWS Defendants' motions to dismiss these claims.

B. Count XI for declaratory relief is also time-barred.

Plaintiffs also assert a claim for declaratory judgment (Count XI) seeking a declaration that the 2007 Mortgage Loan is invalid and unenforceable.[9] Because their claim for declaratory judgment is based on the same actionable conduct that underlies their tort and Chapter 93A claims, which are time-barred, their claim for declaratory judgment fails for the same reason. See, e.g., Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012) (Young, J.) ("The Declaratory Judgment Act is not an independent grant of federal jurisdiction, so dismissal of the underlying claims requires dismissal of the claim for declaratory relief as well.") (internal citations omitted). Therefore, the Court ALLOWS Defendants' motions to dismiss Count XI of the Complaint.

C. Plaintiffs' quiet title claim (Count V) fails for lack of standing.

Plaintiffs also assert a claim for quiet title to the Property pursuant to Mass. Gen. L. c. 240 et seq. (Count V). This claim fails for lack of standing. As another session of this Court explained in Oum v. Wells Fargo, N.A., "[i]n a title theory state like Massachusetts, a mortgagor does not in fact hold legal title to the mortgaged property. Rather, the mortgagee holds the legal title. The mortgagor only possesses an equitable title to the property so long as the debt remains unpaid.

---

[9] Plaintiffs also seek broad declarations not relevant to the present dispute, such as that "banks are not above the law." Doc. No. 1-1 ¶ 199; see also id. at 52 (request for relief (g) asking the Court to "[e]nter a Declaratory Judgment that Defendants are not above the law"). The Court has no authority to grant such broad relief. 28 U.S.C. § 2201(a) (Declaratory Judgment Act) (A district court "may declare the rights and other legal relations of any interested party seeking such declaration" only in cases "of actual controversy within its jurisdiction.").

Thus, a quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud." 842 F. Supp. 2d 407, 412 (D. Mass. 2012) (Stearns, J.) (internal citations omitted); see also United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 51 (Mass. 2011) ("In a 'title theory state' like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. Therefore, when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee.").

Even as pled, the Complaint contains no allegations that Plaintiffs have paid off the Note. See generally Doc. No. 1-1. They merely contend that the Note is unenforceable as time-barred. Id. ¶ 72. On this basis, Plaintiffs argue that the 2007 Mortgage was extinguished by operation of law when the accompanying Note was accelerated. Doc. No. 20 at 11; id. at 23-28. However, as the Court explains in its Admonition to Counsel (Doc. No. 48), the First Circuit Court of Appeals has held that the acceleration of a note does not have the concomitant effect of accelerating the maturity date of a related mortgage and therefore does not trigger the protections of the Massachusetts obsolete mortgage statute, G.L. c. 260 § 33. Harry v. Countrywide Home Loans, Inc., 902 F.3d 16 (1st Cir. 2018); see also In re Fortin, 598 B.R. 689, 692 (Bankr. D. Mass.) ("[T]he inability to recover directly on a note due to the expiration of a statute of limitations is no bar to recovery under a mortgage, so long as the underlying debt remains unpaid.") (citing Pearson v. Mulloney, 194 N.E. 458 (1935) ("A valid mortgage may exist although personal liability on the mortgage note never attached, or has been barred by bankruptcy or the statute of limitations.") (internal citations omitted)).

Because Plaintiffs' contention that the underlying debt—which has not been paid—is unenforceable as time-barred is insufficient to extinguish the mortgage, Plaintiffs lack standing to

bring their quiet title claim.  See Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017) (noting that "[a] mortgagor lacks standing to bring a quiet title action as long as the mortgage remains in effect").  Accordingly, the Court ALLOWS Defendants' motions to dismiss Plaintiffs' quiet title claim (Count V).

D. Plaintiffs' accounting claim (Count XII) fails because it is premature.

Plaintiffs also assert a claim for an accounting of "[a]ll funds received by Defendants and their predecessors on account of the 2007 Mortgage Loan, from any source derived."  Doc. No. 1-1 ¶ 201.  Plaintiffs do not make any specific factual allegations to support their claim for an accounting.  See generally id.  They nowhere allege, for example, that Defendants are seeking to recover amounts in excess of payments they have already made.  They merely allege in conclusory fashion that they are "entitled to a full and accurate accounting of the allocation of all payments which were made, all funds, payments, value and income received by Defendants and their principals or predecessors from any source on account of the 2007 Mortgage Loan, and an accurate identification of all costs and fees which Defendants have charged to [Plaintiffs]."  Id. ¶ 202.  And they argue that "[i]t is axiomatic that [Plaintiffs] have a right to obtain an accounting to determine whether there has been a default, whether any unapplied credits are due on their loan account, whether any payments were made at all, and whether [Defendants have] suffered any legally cognizable damages bear upon the issue of [Plaintiffs'] alleged default."  Doc. No. 36 at 31 (citing Beaton v. Land Court, 326 N.E.2d 302, 307 (Mass. 1975) ("If a mortgagee begins the process of foreclosure, a suit in the Superior Court will lie to enjoin the foreclosure and to obtain an accounting.").

Plaintiffs' right to an accounting is far from "axiomatic."  Indeed, at this stage of the proceedings it is premature.  As another session of this Court recently explained:

> <u>Subsequent to a non-judicial foreclosure sale</u>, the foreclosing mortgagee "'shall be entitled to retain' the sums secured by the mortgage and 'render the surplus, if any, to the mortgagor.'" <u>HMC Assets, LLC v. Conley</u>, No. CV 14-10321-MBB, 2017 U.S. Dist. LEXIS 47876, at *3 (D. Mass. Mar. 30, 2017) (quoting Mass. Gen. L. c. 183 § 27). "[W]ithin 60 days after the receipt of" sale proceeds, the mortgagee "shall provide to the mortgagor . . . a written notice containing an itemized accounting of the disposition of the proceeds arising from a sale under the power of sale including, but not limited to, the sale price, legal fees, auctioneer fees, publication costs and other fees, and any surplus due to the mortgagor." Mass. Gen. L. c. 183 § 27.

<u>Starr v. HSBC Bank, U.S.A., N.A.</u>, 2018 U.S. Dist. LEXIS 134134, at *8-9 (D. Mass. August 8, 2018) (Casper, J.) (emphasis added). Plaintiffs will thus be entitled to an accounting after the foreclosure sale is complete, not before. <u>Id.</u>

Because Plaintiffs' claim for an accounting (Count XII) is premature, the Court ALLOWS Defendants' motions to dismiss this claim.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss Plaintiffs' Complaint (Doc. Nos. 11, 14, 27) are ALLOWED. Plaintiffs' Chapter 93A, tort, and declaratory judgment claims (Counts I – IV and VI – XI) are DISMISSED WITH PREJUDICE. Their quiet title claim (Count V) and claim for an accounting (Count XII) are DISMISSED WITHOUT PREJUDICE. The Clerk shall close this case.

                                                SO ORDERED.

                                                /s/ Leo T. Sorokin
                                                Leo T. Sorokin
                                                United States District Judge